The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts, v. Citizens Trust and Savings Bank et al. Erwin J. Zuehls, Receiver, Appellant. Henry Horner, as Judge of the Probate Court of Cook County, Intervening Petitioner, Appellee.

Gen. No. 36,411.

Opinion filed November 21, 1933.

EDWARD J. HESS, for appellant.

ARTHUR C. BACHRACH, HYLAND J. PAULLIN and OSCAR S. CAPLAN, for appellee.

MR. JUSTICE SCANLAN delivered the opinion of the court.

There was filed, in the above case, the intervening petition of Henry Horner, as judge of the probate court of Cook county, on behalf of Joseph C. Sommers, a minor. After the receiver had answered, the matter was submitted to the chancellor upon agreed facts. From an order decreeing that the claim of Henry Horner, as judge of the probate court of Cook county, Illinois, for and on behalf of Joseph C. Sommers, a minor, in the sum of $738.35, be allowed as a preferred claim, entitled to priority over all general depositors and all general creditors of the Citizens Trust and Savings Bank, and that the receiver pay over to Straus National Bank and Trust Company of Chicago the said sum, to be held by it in trust for the benefit of the minor and subject to the order of the probate court, the receiver has appealed.

The appellant was appointed receiver of the bank when it suspended business on August 4, 1930. It was organized April 1, 1899, under the name of South Side State Savings Bank, and received a certificate of authority from the State of Illinois "to commence business as a bank or banking association under the provisions of said Act (General Banking Act of Illinois) for the purpose of discount and deposit and to buy and sell exchange and to do a general banking business except the issuing of bills to circulate as money and the power to loan money on personal or real security and to accept and execute trusts." In 1905 its name was changed to Citizens Trust and Savings Bank. Prior to October, 1921, Edward R. Sommers was appointed, by the probate court of Cook county, administrator of the estate of Fay Sommers, deceased, and on February 23, 1923, he presented to the court his final account and applied for authority to deposit the distributive share of Joseph C. Sommers, a minor, in the sum of $779.91, in the name of the minor, with Citizens Trust and Savings Bank, until the minor attained the age of 21 years, the deposit to be held subject to the order of the court. On the same date the court entered an order approving the report and granting leave to the administrator to make the deposit in accordance with the application, and, also on the same day, the administrator so deposited the said sum and at the same time advised and informed the bank "that said money was being deposited pursuant to said order of the Probate court entered in the matter of the estate of Fay Sommers, deceased," then pending in said court; that the deposit was to be subject to the order of said court in the matter of the said estate and was being made by the administrator in contemplation of and for the purpose of securing his discharge as administrator, and that upon his making a report to the court that the deposit had been made in the bank pursuant to said order he would be

discharged by said court as administrator. Thereupon the bank accepted the deposit and immediately caused to be entered upon its books and records the statement that said deposit was made and said account was "subject to the order of the Probate court of Cook county," and at the same time it issued a pass book to "Joseph C. Sommers, a minor," upon which appeared the words "Savings Department," "Savings Account," and "3% interest paid on savings deposits." The bank thereafter allowed interest on the deposit at the rate of three per cent per annum and credited the interest to the savings account, semiannually, and when it suspended business there was $972.46 to the credit of the account. On May 14, 1924, the probate court entered the following order:

"Bank book showing deposit of minor's share with Citizens Trust and Savings Bank in accordance with order of Court heretofore exhibited in open court.

"Admr. disc. ct. costs paid.

"(Signed) HENRY HORNER,

"Probate Judge of Cook County."

The parties stipulated "that no proof is necessary . . . with respect to tracing of said deposit, or any part thereof, into the hands of the Receiver and that Receiver . . . will not . . . make any point or contention that there has not been adequate and sufficient proof of tracing; . . . that by reason of the fact that the Administrator has been discharged, Henry Horner, as Judge of the Probate Court of Cook County, was and is the proper person to file said Petition. . . ; that Joseph C. Sommers was thirteen years old in June, 1932. . . ." Certain other facts, which we do not deem it necessary to state, were also stipulated. The chancellor found, from the facts stipulated, that the money deposited by the administrator in the bank was a trust fund and so remained thereafter, and that it did not and does not constitute a general deposit and is not now subject to the claims of

general depositors or other general creditors of the bank.

The appellant contends that "the deposit was a general and not a special one," and that the chancellor erred in holding, under the stipulated facts, that the deposit constituted a trust fund and was not subject to the claims of general depositors or general creditors of the bank.

The appellee contends that "the statute required the deposit, under the facts found in the order appealed from, to be made *only* with a trust company; a trust company can lawfully accept only 'trusts' and is expressly forbidden by statute to do a *banking* business; 'receiving general deposits' is doing a banking business; hence, the intention of the legislature, as expressed by statute, *was to make certain* that deposits (of the kind described in the Order appealed from) would be made as 'trusts' and not as general deposits. The statute expressly declares that it shall be unlawful for any corporation authorized to accept and execute trusts (whether organized under the General Banking Act or under the General Incorporation Act), to accept a deposit (of the kind described in the Order appealed from) unless such company has first complied with both Section 6 and Section 8 of an act entitled: 'An act to provide for and regulate the administration of trusts by trust companies.' The Citizens Trust and Savings Bank accepted said deposit without complying with either Section 6 or Section 8 of said act and hence the acceptance of said deposit was unlawful and constituted a trust and not a general deposit. Where a corporation organized as a bank under the General Banking Act (without any power whatsoever to accept or execute trusts) accepts a deposit of the character described in the Order appealed from, the law will read into the contract of deposit the provisions of Section 2 of the Trust Companies Act which

expressly requires a deposit of such character to be made *with a trust company as a trust;* and such bank will be deemed, under the law, to have accepted such deposit as a trust and not as a general deposit. Under the facts found by the Order appealed from, the Citizens Trust and Savings Bank is estopped to deny (a) that it is a 'trust' company, and (b) that the deposit was accepted as a trust. Apart from any statute, the said deposit was a trust and not a general deposit in view of all of the facts found by the Order appealed from, of which the bank had actual knowledge.''

In his reply brief the appellant argues that as the bank was organized under the banking laws of this state ''it is, therefore, not a trust company. It is not incorporated under the General Corporation Laws of the State for the purpose of accepting and executing trusts. It is a banking corporation organized to conduct a banking business, with incidental powers to accept and execute trusts,—not under the Trust Company Act, but under the Banking Act. The fact that it had these certain incidental powers does not change its character from a bank. The powers granted by its charter of discount and deposit, definitely make it a bank. . . . Thus, being a bank, Citizens Trust and Savings Bank is controlled entirely by the laws of the State pertaining to banks, and not trust companies.'' In the reply brief, the appellant also contends that if, under the facts of this case, the Trust Companies Act applies to the bank, it is unconstitutional because it violates Section 5 of Article XI of the State Constitution, which provides:

''No Act of the General Assembly authorizing or creating corporations or associations with banking powers, whether of issue, deposit or discount, nor amendments thereto, shall go into effect or in any manner be in force unless the same shall be submitted to a vote of the people at the general election next suc-

ceeding the passage of the same, and be approved by a majority of all the votes cast at such election for or against such law."

In support of this last contention appellant states that "the so-called Trust Company Act has not been approved by such a referendum. It was approved on June 15, 1887, in force July 1, 1887, and no general election occurred intermediate those dates." By bringing this case to this court, the appellant waived all questions as to the constitutionality of the act. (See *Armour & Co. v. Industrial Board,* 275 Ill. 328, 335.) In the intervening petition the appellee avers that the Trust Companies Act applies to the deposit, and the appellant, in his answer, "denies that Citizens Trust and Savings Bank was a trust company, as defined by the Act of June 15, 1887, in force July 1, 1887, of the Revised Statutes, but was from its incorporation, carrying on a banking business exclusively." Notwithstanding this state of the pleadings, the appellant did not raise, in the trial court, the question of the constitutionality of the act. He knew when he brought the case to this court that the appellee would rely here, as in the lower court, upon the act. The unwarranted position of appellant appears to be that because it is the appellee who is insisting, in this court, that the Trust Companies Act applies to the deposit, the appellant has the right to here raise the instant question. We may add, that even after the appellant raised the question he failed to move to have the cause transferred to the Supreme Court, thereby electing to remain in this court. Had we the power to pass upon the constitutionality of the act we would find no difficulty in holding against appellant's contention. Section 5 of Article XI of the Constitution requires to be submitted to the people only those acts of the general assembly which (a) authorize or create corporations or associations with banking powers, and (b)

acts of the assembly which amend statutes described in (a). The Trust Companies Act applies to banks only as they operate as trust companies, or, to put it in another way, when they function as trust companies, but it does not regulate them in respect to their general banking business. This important act was enacted in 1887 and its constitutionality has never been questioned. In *Meister v. Carbaugh,* 310 Ill. 486, 488, the court said:

"We have often said that 'when a statute has long been treated as constitutional and important rights have become established thereunder, the courts may thereafter refuse to consider its constitutionality.'" The reply brief indicates clearly that appellant now realizes the importance of the Trust Companies Act in the determination of this appeal. The material parts of that act are as follows [Cahill's St. ch. 32, ¶ 1 *et seq.*]:

"*Trust Companies.*

"*An Act to provide for and regulate the administration of trusts by trust companies.* Approved June 15, 1887. In force July 1, 1887.

". . .

"Sec. 2. . . . Any court having appointed and having jurisdiction of any receiver, executor, *administrator,* conservator, guardian, assignee or other trustee, upon the application of such officer or trustee, or upon the application of any person having an interest in the estate administered by such officer or trustee, after such notice to the other parties in interest as the court may direct, and after a hearing upon such application, may order such officer or trustee to *deposit* any moneys then in his hands, or which may come into his hands thereafter, and until the further order of said court, *with any such corporation,* and upon deposit of such money, and its receipt and acceptance by such corporation, the said officer or trustee shall

be discharged from further care or responsibility therefor. *Such deposits shall be paid out only upon the orders of said court.* . . . (Italics ours.)

"Sec. 4. Such company shall pay *interest* upon all moneys *held by it by virtue of this Act,* at such rate as may be agreed upon at the time of its acceptance of any such appointment, or as shall be provided by the order of the court. (Italics ours.)

"Sec. 6. Each company in all cities and towns of 100,000 inhabitants or more, before accepting any such appointment of deposit, shall deposit with the Auditor of Public Accounts the sum of $200,000, . . . (Here follow provisions requiring this sum to be deposited in the form of certain securities described therein and other details not here material.)

"Sec. 8. It shall *not be lawful* for any such company to accept any trust *or deposit as hereinbefore provided,* after the passage of this Act, without first procuring from the Auditor of Public Accounts a certificate of authority stating that such company has complied with the requirements of this Act *in respect to such deposit.*" (Italics ours.)

It is stipulated that the deposit was made by the administrator under section 2 of the act in order that he might secure his discharge as administrator, and that the bank had full knowledge that the money was being deposited with it pursuant to the order of the probate court entered in the matter of the estate of Fay Sommers, deceased, that the money was being deposited subject to the order of said court, that the deposit was made by the administrator for the purpose of securing his discharge as such administrator, and that when the administrator made a report to the court that the deposit had been made in the bank, pursuant to the order of the court, he would be discharged by the probate court as such administrator.

On February 23, 1923, the administrator had reached a point in the administration of the estate where but one thing prevented his discharge: he had moneys in his hands representing the distributive share of a minor who was then less than four years of age. Under such circumstances an administrator may, if the court deems it proper, secure his discharge by pursuing the procedure required by section 2, and if he follows that procedure and is discharged by the court, his surety is automatically discharged.

In *People v. Brady,* 271 Ill. 100, 110, the court said: "Banking corporations may qualify under the Trust act to accept and execute trusts, and corporations may be organized under the general Incorporation act for that purpose."

Section 2 required the deposit in the instant case to be made with "any such corporation." These words, in our judgment, mean a corporation organized under the General Corporation act for the purpose of accepting and executing trusts, or "any corporation now or hereafter authorized by law to accept or execute trusts," (sec. 1) and banks are the only other kind of corporation which are so authorized. Section 8 provides: "It shall *not be lawful for any such company* to accept any trust *or deposit as hereinbefore provided,* . . . without first procuring from the Auditor of Public Accounts a certificate of authority stating that such company has complied with the requirements of this Act *in respect to such deposit."* The words "or deposit as hereinbefore provided," and also the words "such deposit," used in section 8, clearly relate to the term "deposit" in section 2. The Citizens Trust and Savings Bank was authorized by its charter "to accept and execute trusts," but appellant concedes that it had not complied with sections 6 and 8 at the time it accepted the deposit. Section 6 requires "each company, . . . before accepting any such appoint-

ment of deposit," to "deposit with the Auditor of Public Accounts the sum of $200,000" in securities of the kind and type specified in the section. The words "such appointment of deposit" relate to the "deposit" required by section 2. In our opinion, the deposit intended by section 2 must be made with a corporation organized under the general incorporation act for the purpose of accepting and executing trusts, or a bank which has in its charter a provision authorizing it to accept and execute trusts and which has qualified under the provisions of sections 6 and 8 of the Trust Companies Act. To adopt the appellant's interpretation of section 2 would be to run counter to the plain purpose of the act, which is to protect deposits made by trustees under it, not to endanger them. The importance and breadth of section 2 may be readily seen from the fact that it applies to "any receiver, executor, administrator, conservator, guardian, assignee or other trustee";—in other words, it applies only to fiduciaries, who occupy a position of peculiar confidence toward others. As applied to this case, we cannot believe that the legislature intended that the administrator and his bondsman might be discharged and the moneys of the minor subjected to the risks which attach to general deposits of a bank. On February 23, 1923, on motion of the administrator, a guardianship estate could have been opened in the probate court, a guardian appointed, a bond given, and an order entered permitting the administrator to turn over the moneys in his hand to such guardian, and by following this procedure the administrator could have secured his discharge. Section 2 intends that such a procedure may be avoided when, in the judgment of the probate court, it seems unnecessary; but it also intends that one trustee must take the place of another. Under the statute creating them, trust companies have the power only "to accept and execute

trusts,'' and they are expressly forbidden by the statute from engaging in a banking business. When a bank which is qualified as a trust company under the Trust Companies Act accepts a deposit which it knows is made under section 2, then, as a matter of law, such bank accepts the deposit as a trust company and not as a bank. Within the intent and purpose of the Trust Companies Act a corporation organized under the general incorporation act for the purpose of accepting and executing trusts, and a bank authorized by law to accept a deposit under section 2, are both trust companies.

The appellant contends that the Citizens Trust and Savings Bank was organized as a bank and never qualified as a trust company, and that therefore the provisions of the Trust Companies Act have no application to the deposit. The bank had knowledge of the character of the deposit and the purposes for which it was made, and is chargeable with knowledge of the statute governing the deposit, and, as it had not qualified under the act, the receipt of the deposit under such circumstances was unlawful. Where a deposit itself is unlawful it constitutes a trust and not a general deposit, and upon the insolvency of the bank a preferred claim will be allowed. (See *People v. Farmers State Bank,* 338 Ill. 134, 137.) Many cases to the same effect might be cited, but the appellant concedes, apparently, that ''where the deposit itself was unlawful'' a trust arises and may be recovered as a preferred claim upon the insolvency of the bank. Furthermore, as appellee ably contends, the appellant is estopped to deny '' (a) that it (the bank) is a trust company, and (b) that the deposit was accepted as a trust,'' and appellee specially calls attention to the fact that the word ''Trust'' has appeared as part of the name of the bank since September 16, 1905, that its charter authorized it to accept and execute trusts, that under the law it was charge-

able with knowledge of the provisions of section 2, and that it, with full knowledge of the nature and purpose of the deposit, accepted it. We agree that the appellant should be estopped, in the present case, from denying that the bank is a trust company or that it received the deposit as a trust.

The appellee has strenuously argued a number of other contentions in support of his position that the decree must be affirmed, but we do not deem it necessary to refer to them.

The appellant finally argues that, notwithstanding the fact that the bank knew the source of the funds and that the administrator was making the deposit under section 2 of the act, nevertheless, it appears that the administrator deposited the moneys in the savings department of the bank and the bank agreed to pay interest on the deposit, and that these circumstances, together with the further fact that the administrator exhibited the pass book to the probate court, clearly indicate that the bank had the right to use the funds in its general banking business, and the relationship of debtor and creditor was thereby created. We find no merit in this contention. Neither the bank nor the administrator had the power to defeat the purposes of the statute. Section 2 governs the nature of the deposit that shall be made by a trustee seeking a discharge, and when, as in this case, a bank has full knowledge of the nature and purpose of a deposit offered by a trustee, and accepts it, it cannot, by bookkeeping methods or otherwise, cause the deposit to become a general one, even though the trustee, through ignorance, indifference, or connivance, makes no objection to the method employed by the bank in the transaction. To hold otherwise would be to allow banks to defeat the law. If the bank had not qualified under the Trust Companies Act, as appellant now asserts, it was its duty, under the law, to refuse the

deposit, and its acceptance, as we have heretofore stated, constituted an unlawful act.

After a careful consideration of the questions involved in the instant appeal we have reached the conclusion that the decree of the superior court of Cook county should be affirmed, and it is accordingly so ordered.

*Affirmed.*

SULLIVAN, P. J., and GRIDLEY, J., concur.