The People of the State of Illinois ex rel. Oscar Nelson, Auditor of Public Accounts, Complainant, v. Chicago Bank of Commerce, Defendant.

Valentine Gits, Guardian, Appellee, v. Alfred K. Foreman, Receiver of Chicago Bank of Commerce, Appellant.

Gen. No. 37,009.

Opinion filed May 2, 1934.    Rehearing denied May 16, 1934.

Schuyler, Weinfeld & Hennessy, for appellant; Theodore E. Zahler and Lawrence Nelson, Jr., of counsel.

Daniel M. Dever and James T. Moore, for appellee; Daniel V. Gallery, of counsel.

Mr. Justice Wilson delivered the opinion of the court.

Valentine Gits, the guardian of the estate of Paulina Gits, a minor, filed her intervening petition in the liquidation proceedings of the Chicago Bank of Commerce, asking to be declared a preferred creditor as to the assets of the bank because of a deposit of her ward's funds in the sum of $4,048.32, made by her as guardian. The original deposit was made February 17, 1930, and constituted the sum of $6,370.71. This deposit was in the name of the estate of Paulina Gits, a minor by Valentine Gits, guardian, and the deposit was made in the Union Bank of Chicago, which issued its passbook evidencing the fact that the same had been deposited subject to the joint control of the guardian, Valentine Gits, and the surety company, Fidelity Casualty Company of New York, the surety for the guardian. All withdrawals were signed by the guardian and countersigned by the surety company. This deposit was made without an order of the probate court and, so far as the record discloses, on the guardian's own initiative. Moneys were drawn from this account from time to time and sometimes on orders of the probate

court, until the balance remaining on hand at the time of the institution of this proceeding was $3,848.32.

On October 13, 1931, the Chicago Bank of Commerce, a corporation, assumed the deposit liability of the Union Bank of Chicago and this guardian's account was transferred from the Union Bank of Chicago to the Chicago Bank of Commerce, which issued its pass-book No. 27773 to the guardian.

June 24, 1932, the Chicago Bank of Commerce was closed and on June 28, 1932, Alfred K. Foreman was appointed receiver and is now acting as such.

On June 23, 1932, a check for $200 was drawn against said account and returned unpaid, which, together with the sum of $3,848.32, shown as the balance, makes a total sum of $4,048.32, claimed by the claimant, Valentine Gits, to be a trust fund.

The matter was referred to a master in chancery who held that the deposit was a trust fund and recommended that an order be entered holding the bank as trustee for the benefit of the minor under the provisions of the Trust Company Act. This finding was approved by the chancellor and a decree entered finding that this deposit was a trust fund and directing the receiver to pay such deposit pro ratably with all other preferred claims in due course of administration.

It is agreed by the parties that both the Union Bank of Chicago and the Chicago Bank of Commerce had complied with an act in force July 1, 1887, entitled, ''An Act to provide for and regulate the administration of trusts by trust companies,'' par. 345, chap. 32, Cahill's Illinois Revised Statutes, 1933.

The claimant contends first that the defunct banks, both the Union Bank of Chicago and the Chicago Bank of Commerce, having qualified under this act, received the deposit as trustee and with knowledge of the fact that the deposit was made by a guardian of a minor's moneys. The act provides as follows:

"¶ 346. TRUST COMPANY MAY BE RECEIVER, AS-
SIGNEE, ADMINISTRATOR, GUARDIAN.]   § 2.   Whenever
application shall be made to any court in this State for
the appointment of any receiver, assignee, guardian,
conservator, executor, administrator or other trustee,
it shall be lawful for such court to appoint any such
corporation as such trustee, receiver, assignee, guard-
ian, conservator, executor or administrator: *Provided,*
any such appointment as guardian or conservator shall
apply to the estate only, and not to the person.

"Any court having appointed and having jurisdic-
tion of any receiver, executor, administrator, conserva-
tor, guardian, assignee or other trustee, upon the
application of such officer or trustee, or upon the appli-
cation of any person having an interest in the estate
administered by such officer or trustee, after such no-
tice to the other parties in interest as the court may
direct, and after a hearing upon such application, may
order such officer or trustee to deposit any moneys
then in his hands, or which may come into his hands
thereafter, and until the further order of said court,
with any such corporation, and upon deposit of such
money, and its receipt and acceptance by such corpo-
ration, the said officer or trustee shall be discharged
from further care or responsibility therefor.   Such de-
posits shall be paid out only upon the orders of said
court."

The act further provides that upon proper applica-
tion and after hearing, the probate court may order
the officer or trustee to deposit funds for safe-keeping
with a bank duly qualified to act under the Trust Act
and reduce the bond of such officer to cover only such
portion of the estate as remains in his or her hands.
It is admitted that no such hearing was had before the
probate court and no order entered therein directing
the guardian to deposit the moneys with a trust com-
pany or entering an order discharging the trustee or

guardian from further responsibility. So far as the record discloses the deposit was made by the guardian on her own responsibility. As a precautionary measure, the surety on her bond sought and obtained the right to countersign all checks drawn against the account. As the record stands the minor is still protected by the bond of her guardian.

The case of *People ex rel. Nelson v. Citizens Trust & Savings Bank,* 272 Ill. App. 444, cited as an authority on behalf of the claimant, was a case where the guardian had deposited funds pursuant to an order of court on an application by the administrator for the purpose of securing his discharge as such and relieving him from liability. No such order appears in this proceeding. The guardian here did not seek to avail herself of the provisions of the statute and, consequently, cannot now avail herself of its protection.

The banks in question were engaged in a general banking business as well as that of trust companies. The fact that the deposit was in the name of a guardian for a minor did not change the character of the deposit. A guardian has a right to make a general deposit of funds in her hands in a bank and, unless special arrangements are made, the deposit is a general one and the guardian assumes the liability in case of the insolvency of the bank.

The Supreme Court of this State in the case of *People ex rel. Nelson v. Home State Bank of Grant Park,* 338 Ill. 179, in its opinion, says:

''The plaintiff in error contends that the money in question in this case constitutes a trust fund, that the bank knew it was a trust fund, the account was an official account, and therefore the deposit created a trust relation between the bank and the plaintiff in error. Deposits in a bank may be either general or special. A general deposit is a deposit generally to the credit of the depositor, to be drawn upon by him in the usual course of the banking business. . . . A

special deposit is a deposit for safe keeping, to be returned intact on demand, or for some specific purpose not contemplating a credit on general account. . . . A deposit in a bank is presumed to be a general deposit in the absence of an agreement to the contrary. . . .

"A fiduciary may deposit trust funds as a general deposit. The fact that the funds so deposited are trust funds and known by the bank to be so does not make the deposit special. In the absence of evidence making it a special deposit the depositor simply becomes a creditor of the bank, standing upon the same footing as other general creditors and entitled to no preference, the bank simply becoming indebted to him in his representative capacity. . . . The depositor may be described in the pass-book, certificate or receipt which evidences his deposit, as a trustee, executor, administrator, guardian, agent, treasurer, manager, or by some other word or words indicating his fiduciary character, but this will not, alone, render the deposit special."

It is next insisted that the deposit of the minor's funds was a loan to the bank and, having been made without security, was in violation of par. 22, chap. 64, Cahill's Ill. Rev. Stat. 1933. This Act is the one upon which this claim is based and is known as the Guardian and Ward Act. Section 22 of that Act provides:

"¶ 22. INVESTMENTS—GUARDIAN'S DUTY.] It shall be the duty of the guardian to put and keep his ward's money at interest upon security to be approved by the court, or by investing, on approval of the court, the same in United States bonds, or in the bonds of any county or city which are not issued in aid of railroads, and where the laws do not permit said counties or cities to become indebted in excess of five per cent of the assessed valuation of property for taxation therein, and where the total indebtedness of such county or city does not exceed five per cent of the assessed valu-

ation of property for taxation at the time of such investment. Personal security may be taken for loans not exceeding one hundred dollars. Loans upon real estate shall be secured by first mortgage thereon and not to exceed one-half the value thereof. No mortgage loan shall be made for a longer time than five years nor beyond the minority of the ward: *Provided,* the same may be extended from year to year without the approval of the court. The guardian shall be chargeable with interest upon any money which he shall wrongfully or negligently allow to remain in his hands uninvested after same might have been invested.''

From a reading of this act it is apparent that the duty of investing the funds of the ward devolves upon the guardian and that the investments should be made upon an order of the court or on the court's approval in certain classified investments. There is nothing so far as is discernible in this act which would prevent a guardian from banking funds belonging to the ward, pending the receiving of a proper order of the probate court authorizing investment by the guardian. It is not conceivable that a guardian would be required to carry large sums of money about his person or to keep such funds in his possession until a proper and suitable investment could be found. The law does not contemplate absurdities and in our opinion was not intended to cover temporary deposits made pending the obtaining of a proper order of the probate court. If the guardian neglects to invest the funds and permits them to remain for a period of time in a bank as a deposit, the risk is that of the guardian.

In the case of *People ex rel. Russell v. Farmers State & Savings Bank of Grant Park,* 338 Ill. 134, funds were deposited in the savings department of the bank and a passbook issued to the depositor as treasurer. In that case it was the contention of the complainant that he was entitled to a preference because the money de-

posited by him constituted a trust fund, but it was held that unless it became a trust fund by special agreement or under circumstances sufficient to create a trust, it was a general deposit and the bank became the debtor of the depositor to the extent of the deposit and to that extent the depositor became the creditor of the bank. Deposits in a bank are not loans to the bank and, consequently, cannot be investments. The term ''deposit'' has a well accepted meaning in the banking business and money deposited is payable upon demand, nor is there any difference between a deposit in a checking account and one in a savings account. *McCormick v. Hopkins*, 287 Ill. 66; *Emerson v. North American Transportation & Trading Co.*, 303 Ill. 282.

We are referred to the cases of *State ex rel. First Nat. Bank of Crete v. Bartley*, 39 Neb. 353, and later Nebraska cases to the effect that a deposit being made of State funds contrary to the statute, such funds were considered as trust funds when taken by the bank as deposits contrary to the statute. The Supreme Court of this State in the recent case of *People ex rel. Nelson v. Peoples State Bank of Maywood*, 354 Ill. 519, had occasion to consider this question. From the facts in that case it appears that the Village of Maywood sought to have certain funds deposited by it in the defunct bank declared a preferred claim on the ground that they were trust funds. It appeared that there was a legal ordinance in Maywood which required a bank to execute an indemnity bond to the village in order to qualify as a depositary of village moneys received and deposited by the treasurer from time to time. It was the contention of the village that the acceptance of deposits without complying with the ordinance created it a trustee *ex maleficio* and that, therefore, these funds so deposited by the treasurer of the Village of Maywood should be declared trust funds. It was held that the omission to observe a mandatory

provision of a statute or ordinance renders unlawful the act or proceeding which it governs or to' which it relates, and that a deposit wrongfully accepted because of the failure of the bank to furnish the indemnity bond as required, constituted it a trust fund; that such funds deposited in violation of. law did not become assets of the bank but are impressed with a constructive trust. It will be noted, however, that in cases of this class the duty is imposed upon the bank and that in order to accept funds of a certain class it is required to comply with certain laws. In the case at bar, however, the prohibition does not run against the bank but the statutory requirement is placed upon the guardian.

In view of the fact that the Supreme Court of this State has recognized that the deposit has not the legal effect of a loan, it necessarily follows that a deposit has not the legal effect of an investment. There is nothing in the Guardian and Ward Act, Cahill's St. ch. 64, which prevents a guardian from depositing money in a bank, nor is there anything in that act which prevents such a bank from receiving such a deposit.

In the cases cited by the claimant the law required of the depositary some positive act on its part before accepting the deposit. There is no provision in the Guardian Act nor in the Banking Act requiring a banking corporation to do anything in compliance with the law before becoming a depositary of guardian funds. In this respect the case at bar is very different from those cited in support of the position taken by the claimant. Neither is there any order of court directing the guardian to deposit the funds of her ward in either of the institutions involved in this proceeding.

We are unable to agree with the conclusion reached by the chancellor and for the reasons stated in this opinion, the decree of the circuit court is reversed.

*Decree reversed.*

HALL, P. J., and HEBEL, J., concur.